OPINION *Page 2 
{¶ 1} Defendant-appellant Floyd Robinson appeals from his burglary conviction entered after a jury trial in the Mahoning County Common Pleas Court. Appellant alleges the evidence was insufficient to establish the trespass element and "likely to be present" element. He also contends that the jury verdict was contrary to the manifest weight of the evidence. His final contention is that the trial court abused its discretion in failing to grant a continuance. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE FACTS {¶ 2} On November 5, 2006 at 5:30 a.m., Youngstown Police Officers responded to a call of a break-in in progress at 522 Idora Avenue, the home of Martwain Dill, a recent murder victim. (Mr. Dill had been shot in the head on November 3, 2006 at 11:15 a.m.) Officer Butler noticed a broken window in the rear of the house and heard movement through the window. He saw appellant running around the house trying to get out various windows. Appellant even tried to escape out of the broken window until he noticed the officer standing there watching him. (Tr. 109, 117). Finally, appellant crashed through a front window and ran. (Tr. 135-136). Officer Rowley, who saw appellant break through the window, gave chase and soon discovered him hiding in a vehicle. (Tr. 137, 140, 142-143).
 {¶ 3} In the meantime, Officer Butler assisted another officer in arresting appellant's friend, Willie Shakoor, who was found hiding in the fruit cellar portion of the basement. (Tr. 111). At the time, Mr. Shakoor told police that he lived there and that he had the keys to the house in his pocket. These keys worked to some but not all of the locks on the front door. (Tr. 111-112). Appellant and Mr. Shakoor were immediately arrested and later indicted for fourth degree felony burglary.
 {¶ 4} At trial, the state presented the testimony of Officers Butler and Rowley, who testified to their roles in the arrest. The state also called Mr. Shakoor, who had pled guilty to breaking and entering, a fifth degree felony, with the state recommending probation. (Tr. 125). Mr. Shakoor testified that he and appellant had been best friends for ten years. (Tr. 126). He disclosed that he had read in the paper that Mr. Dill, *Page 3 
whom he knew from the neighborhood, was killed on November 3, 2006. (Tr. 120, 126). Mr. Shakoor then revealed that in the early morning hours of November 5, 2006, he and appellant were smoking marijuana in his driveway when they noticed people down the street at Mr. Dill's house. (Tr. 120-121). When they got to Mr. Dill's house, the people were gone and the back door was allegedly open; so, they walked into the empty house. (Tr. 121-122).
 {¶ 5} Mr. Shakoor claimed that appellant's friend (with the last name of Bailey) also lived in the house with Mr. Dill and that others may have lived there as well because there were always so many people there. (Tr. 121-122). He described the house as a drug house. (Tr. 126). Mr. Shakoor then testified that Mr. Bailey's brother gave him the keys to the house. (Tr. 128). He also said that he was free to come and go as he pleased and to take others to the house with him. (Tr. 129, 132).
 {¶ 6} The jury found appellant guilty of the charged burglary, and the court sentenced him to eighteen months in prison. Appellant filed the within timely appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 7} Appellant's first assignment of error provides:
 {¶ 8} "THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION."
 {¶ 9} Sufficiency of the evidence deals with legal adequacy rather than the weight of the evidence. State v. Thompkins (1997),78 Ohio St.3d 380, 386 (sufficiency is a question of law). In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court determines that no rational juror could have found that the elements of the offense were proven beyond a reasonable doubt. State v. Goff (1998), 82 Ohio St.3d 123, 138. In conducting this review, we evaluate the evidence in the light most favorable to the prosecution. Id.
 {¶ 10} The elements of fourth degree burglary are: by force, stealth or deception, trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present. R.C. 2911.12(A)(4), (C). (We note that this is a lower degree of felony burglary due to the lack of an allegation that appellant had an intent to commit a criminal offense once inside). *Page 4 
 {¶ 11} First, appellant claims that it was not likely someone would be present because Mr. Dill was deceased and because the landlord testified that the family did not return his call to make arrangements until late in November 2006. Appellant notes that a mere showing that the structure entered was a residential dwelling is insufficient. See State v.Fowler (1983), 4 Ohio St.3d 16, 18. He cites appellate cases dealing with homeowners' vacations and regular work schedules. See, e.g.,State v. Hibbard, 12th Dist. Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707 (finding sufficient evidence where someone regularly checked on cat during homeowner's vacation); State v. Cantin (1999),132 Ohio App.3d 808 (finding insufficient evidence where entry took place during owner's regular work hours). However, these are not binding holdings, and each situation must be evaluated on a case-by-case basis.
 {¶ 12} Here, we have the specific fact that the intruders knew that the main occupant had just died less than forty-eight hours before. We accept the theory that the decedent's family or other representatives are likely to be engaged in wrapping up his affairs, packing his belongings, collecting his clothes and photographs for the funeral and/or mourning his passing in his abode among his possessions. Contrary to appellant's suggestion, the date a family member happens to return a landlord's call does not establish that the family or others did not have their own lawful means of entry. Moreover, the likelihood of another's presence must be evaluated at the time of the entry and not solely based upon later learned facts that may tend to diminish likelihood of presence.
 {¶ 13} Although the state must show more than a possibility of presence, reasonable certainty is not required to satisfy the "likely to be present" element. See State v. Benner (1988), 40 Ohio St.3ed 301, 313 (equating "likely" with "probable"). Id. The jury is free to make inferences on likelihood of presence. Fowler, 4 Ohio St.3d at 18 (where people were in and out on day of entry but temporarily absent at the exact time of the entry). In fact, this court has held that the inference that occupants are likely to be present should be liberally construed. State v. Graves (May 1, 2001), 7th Dist. No. 99CA113. We also note here that circumstantial evidence has the same value as direct evidence. State v. Nicely (1988), 39 Ohio St.3d 147, 151. *Page 5 
 {¶ 14} Besides the likelihood of the decedent's representatives being present to secure his property, there exist two additional facts that hinder appellant's defense. First, Mr. Shakoor claimed that a Mr. Bailey also lived in the house. One could thus find it likely that this Mr. Bailey would be present in the early morning hours. Second, Mr. Shakoor disclosed that they witnessed people coming out of the subject house at the time they decided to walk over. (Tr. 121). One could reasonably conclude from this that someone could be remaining in the house or could soon return. Consequently, viewing all of the evidence in the light most favorable to the state, some rational juror could determine that the "likely to be present" element was satisfied.
 {¶ 15} Next, appellant claims that he had permission to enter the house and thus there was insufficient evidence concerning the trespass element. He points to Mr. Shakoor's testimony that Mr. Bailey lived in the house with Mr. Dill, that Mr. Bailey's brother gave him the keys, and that he was permitted to enter with guests as he pleased. First, we must point out that the keys to the front door that Mr. Shakoor had in his possession did not work every lock on the front door. As a matter of fact, he stated that they entered through an open back door. SeeState v. Buelow, 2d Dist. No. 2004CA18, 2004-Ohio-6052 (where defendant entered dark house through open door which others had left earlier).
 {¶ 16} Second, Mr. Shakoor claimed that Mr. Bailey's brother, who did not live there, gave him the keys. He did not claim to have received the keys with an open invitation from Mr. Dill or Mr. Bailey themselves. For all we know, someone supplied them with the keys in order to facilitate the break-in.
 {¶ 17} Third, the jury was not required to believe that Mr. Shakoor received the keys from Mr. Bailey's brother. Rather, they could rationally wonder if he stole them earlier at a party, found a hidden key outside or picked the keys up that night while in the house after their entry through the back door or the broken window. Notably, Mr. Shakoor told police that he had the keys because he lived there but did not reiterate this claim at appellant's trial. In any event, possession of keys does not automatically negate trespass. See State v.Roberts (2001), 139 Ohio App.3d 757, 766-769.
 {¶ 18} In fact, the back window was broken as if it was the point of entry. Appellant even tried to escape out this broken window. Then, appellant crashed out of *Page 6 
the closed front window, fled the scene and hid in a parked vehicle. The act of fleeing and the particular dangerousness of the act of crashing through a window are also valid considerations toward the element of trespass. See State v. Turner, 8th Dist. No. 88373, 2007-Ohio-2776, ¶ 13
(act of hiding is incriminating evidence in burglary trial). Additionally, Mr. Shakoor's act of hiding in the fruit cellar was further evidence indicating trespass. See id. Viewing the evidence in the light most favorable to the state, a rational person could conclude that the element of trespass was established beyond a reasonable doubt.
 {¶ 19} Besides the direct evidence and the rational inferences permissibly drawn therefrom, credibility or the lack thereof was essential here. As aforementioned, Mr. Shakoor's claims need not all be taken as the absolute truth. Most of appellant's contentions seem more akin to those involved in a weight of the evidence analysis. This observation leads to appellant's next assignment of error.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 20} Appellant's second assignment of error contends:
 {¶ 21} "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 22} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. Thompkins, 78 Ohio St.3d at 387. The reviewing court determines whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id. Where the criminal case was tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389. This is only done in exceptional circumstances. Id. at 387.
 {¶ 23} This standard is derived from the principle that where there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. State v. Gore (1999),131 Ohio App.3d 197, 201. Rather, we defer to the jury who was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections and gestures of the witnesses testifying before it. See *Page 7 Seasons Coal Co. v. Cleveland (1994), 10 Ohio St.3d 77, 80; State v.DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 24} Here, one could believe that Mr. Bailey was a resident at Mr. Dill's house, that Mr. Bailey's brother gave Mr. Shakoor keys (with Mr. Bailey's consent) and that Mr. Bailey gave Mr. Shakoor standing permission to enter the residence with a guest whenever he wanted. However, a rational juror need not believe all of these claims. Rather, as touched on above, there is more than one reasonable construction of the evidence in this case. As such, we find no manifest miscarriage of justice here, and we refuse to sit as the thirteenth juror who disagrees with the jury's interpretation of the evidence. The jury personally viewed Mr. Shakoor's testimony and could assign credibility to each statement he made. Their conclusion in assigning weight and credibility is not contrary to the manifest weight of the evidence.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 25} Appellant's third assignment of error provides:
 {¶ 26} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT GRANT ROBINSON A CONTINUANCE OF HIS TRIAL DATE."
 {¶ 27} A preliminary hearing was held before the Youngstown Municipal Court on November 15, 2006, after which the court found probable cause to bind appellant over to the Mahoning County Common Pleas Court. Appellant was then indicted on December 7 and arraigned on December 19, 2006. In a December 20, 2006 judgment entry, the court set the initial prosecutor pretrial for December 26, 2006 and the trial for January 24, 2007.
 {¶ 28} It was not until a January 17, 2007 pretrial before the court that appellant's counsel voiced his desire to obtain the transcript of the preliminary hearing. In an entry filed that same day, the court stated that trial would proceed immediately after a certain named criminal case. The court's entry noted in pertinent part:
 {¶ 29} "Defendant demands his right to speedy trial. Defendant, by and through counsel, will not agree to extend the time for speedy trial to allow preparation of the transcript of the preliminary hearing. Defendant does not wish to waive speedy trial."
 {¶ 30} On the morning of trial, defense counsel reiterated his desire to secure the preliminary hearing transcript, which he opined would be helpful at trial. He noted *Page 8 
that appellant would not allow counsel to move to continue the trial in order to obtain the transcript. (Tr. 5-6). The court noted that the two police officers testifying at trial had been the only witnesses at the preliminary hearing. Defense counsel conceded that he had notes that he took regarding those officers' testimony at the preliminary hearing. (Tr. 9). The court further disclosed that it does not continue cases without a speedy trial waiver. (Tr. 8-9). The court pointed to an "unbelievable" number of cases assigned to the trial courts and the hardship in meeting speedy trial deadlines if continuances are granted.
 {¶ 31} On appeal, appellant argues that the court abused its discretion in denying his request for a continuance in order to obtain the preliminary hearing transcript based upon the reason that appellant refused to waive his speedy trial rights. Appellant points out that nothing in the various state laws requires a speedy trial waiver in order to receive a continuance. He also believes that the court's concern on setting a continued trial date within the speedy trial time was unfounded, noting that at the time of the trial, there were still thirteen days remaining on the speedy trial clock. He concludes that the court's policy of requiring a speedy trial waiver before granting a continuance, which itself would toll the speedy trial time, is unreasonable and arbitrary.
 {¶ 32} A decision to grant or deny a continuance is a matter within the trial court's sound discretion. State v. Unger (1981),67 Ohio St.2d 65, 67. Thus, the appellate court shall not reverse a denial of a continuance absent an abuse of discretion. Id.
 {¶ 33} "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id.
 {¶ 34} There is a balancing test used to weigh any potential prejudice to a defendant against the trial court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Id. We can view the length of the delay, the existence of prior continuances, the inconvenience which would result to all involved, the timeliness of the motion and the reasons for the delay. Id. *Page 9 
 {¶ 35} The Fifth District has once suggested that a trial court's decision to condition the granting of a continuance on a waiver of speedy trial is an acceptable discretionary means of controlling the docket, specifically to the case at hand and the docket in general.State v. Lipkins (Dec. 20, 1993), 5th Dist. No. CA-9335. However, that district more recently determined that the trial court erred in denying a motion for a continuance based upon a defendant's refusal to sign a speedy trial waiver. State v. Fentress, 5th Dist. No. 2001CA155, 2002-Ohio-2477. Still, the court concluded:
 {¶ 36} "Even though the court erroneously stated a time waiver was necessary, the record contains ample evidence justifying the court's decision. For these reasons, we find the trial court did not err in denying appellant's motion for a continuance. Appellant's first assignment of error is overruled." Id.
 {¶ 37} Regardless of whether the trial court's position is legally justified, the failure to grant a continuance here is upheld on various alternative grounds. First, it is important to note that before trial, counsel indicated not only that appellant would not sign a speedy trial waiver and that he would not allow counsel to move for a continuance in order to obtain the preliminary hearing transcript, which would waive his time during that tolling period. (Tr. 5-6). See R.C. 2945.72(E) (delay necessitated on motion of defendant); R.C. 2945.72(H) (any period of delay necessitated by continuance granted on defendant's own motion). It was also made clear at the pretrial, where the issue was first raised, that appellant did "not wish to wait for that transcript to be prepared." (P.T. Tr. 4). If appellant would not even permit counsel to ask for a continuance, then the court could not have granted a continuance in any event. Although counsel may have wished for a continuance, appellant himself invited and in fact insisted on the lack of a continuance. Thus, his argument on appeal is meritless.
 {¶ 38} Second, there exist other grounds, besides a routine policy, upon which a continuance here could reasonably be denied. For instance, the motion could be characterized as untimely with no good reason for that untimeliness. The fact that a preliminary hearing transcript could help to prepare trial questions would be known from the beginning. A trial court could rationally determine that one should not wait until the plea offer is refused the week before the scheduled trial to seek such a *Page 10 
transcript. State v. Brent, 8th Dist. No. 82815, 2004-Ohio-2388, ¶ 24. The inconvenience in rescheduling next week's trial (where the time on the speedy trial clock is short) for the mere transcription of a preliminary hearing transcript, which could take weeks to months to produce and which should have been ordered earlier, could be found to outweigh any prejudice to the defense.
 {¶ 39} Third, prejudice has not been established on appeal. That is, the transcript of the November 15, 2007 preliminary hearing, which is considered a part of the record below, was not produced for this court's review. Nor are any allegations of unknown variations in testimony between the preliminary hearing and the trial set forth. Without allegations of prejudice, appellant has no grounds for appeal. Id. at ¶ 25 (also noting failure to order preliminary hearing transcript for record on appeal). This assignment of error is overruled.
 {¶ 40} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 Donofrio, J., concurs. Waite, J., concurs. *Page 1