[Cite as *State v. Tinney*, 2012-Ohio-1495.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    10 MA 182 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| MATTHEW TINNEY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Common Pleas
                              Court, Case No. 09CR1008.

JUDGMENT:                     Affirmed.

APPEARANCES:
For Plaintiff-Appellee:       Attorney Paul Gains
                              Prosecuting Attorney
                              Attorney Ralph Rivera
                              Assistant Prosecuting Attorney
                              21 West Boardman Street, 6th Floor
                              Youngstown, Ohio  44503

For Defendant-Appellant:      Attorney Rhys Cartwright Jones
                              42 North Phelps Street
                              Youngstown, Ohio  44503

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

                              Dated:  March 30, 2012

VUKOVICH, J.

{¶1} Defendant-appellant Matthew Tinney appeals from his burglary conviction entered in the Mahoning County Common Pleas Court. He first argues that cumulative error involving three evidentiary issues affected his right to a fair trial. He then contends that the evidence was insufficient to support the element that someone was likely to be present at the time of the burglary in order to support a second degree felony. He also argues that the verdict was contrary to the manifest weight of the evidence. For the following reasons, the judgment of the trial court is affirmed.

STATEMENT OF THE CASE

{¶2} The twenty-year-old victim of the burglary, Lucas, has scoliosis. He had a prescription for Vicodin because he had thirteen vertebrae surgically fused and two rods placed in his back. (Tr. 278, 310). He also had a prescription for Valium due to muscle tension. (Tr. 279). He had just refilled his prescriptions and received more than one hundred Vicodin pills and one hundred Valium pills. (Tr. 280, 311). Lucas kept his prescriptions in a heavy silver box that he hid in his closet; the box had a combination lock but he often left the numbers on the correct combination of 000. (Tr. 280, 323, 328, 330-331). The box also contained some religious memorabilia, his grandfather's watch, a small wooden box containing change, and firecrackers. (Tr. 283, 300-301).

{¶3} In August of 2009, Lucas started associating with appellant, whom he had been friends with for a time five years prior. Lucas testified that appellant repeatedly asked him for some Vicodin. (Tr. 281). He stated that he never sold his pills and never gave appellant any pills. (Tr. 282). On August 26, 2009, Lucas had plans to travel to a quarry an hour away and return around 6:00 p.m. Appellant was invited but had to work. (Tr. 276, 283). On the day of the trip, appellant used his lunch break to stop at Lucas's home in Canfield, where he lived with his mother and his sister. (Tr. 278, 307). Appellant again asked for Vicodin and was again denied. (Tr. 278).

{¶4} Lucas left for the park at 1:00 p.m. Appellant called him "a few too many times, and the phone calls were awkward." Appellant asked where he was and when he was coming home even though he already knew the answers to those questions.

(Tr. 285). When Lucas returned home that evening, he noticed that his silver box was missing. (Tr. 287).

{¶5} The neighbor came over and said that at 3:15 p.m. (3:50 in other statements), she saw someone with blond hair wearing a red shirt, cargo pants, and white tennis shoes jog through the Hammond's backyard; four minutes later he ran back with a silver case. (Tr. 437, 441-443, 449). She checked to see if the family was home, then returned to speak to them later. (Tr. 445). Her description fit appellant, whose work uniform were these colors. Lucas testified appellant had used the sliding glass door when he went to smoke on the patio and would have known that the lock was broken. (Tr. 285).

{¶6} When appellant arrived at Lucas's residence that evening, the neighbor immediately identified him as the person she saw running through the yard. (Tr. 319, 450). She even voiced that he had changed his clothes, and he responded that he had changed after work. (Tr. 451). Lucas's father yelled at appellant. The box was anonymously returned to Lucas's father's home in Austintown the next day. (Tr. 291. 344). The pill bottles were missing most of their contents. (Tr. 292-293, 304). The evidence report states that one bottle contained eighteen white tablets with writing on the pill and another bottle contained some peach pills, two white pills, and one pink pill. (Tr. 298).

{¶7} A detective spoke with appellant, who stated that he went to Lucas's on his lunch break to buy Vicodin, that he knew they were in the silver box, but that he did not steal the box. (Tr. 389). Appellant stated that he was at work doing lawn care at an apartment complex in Austintown until 4:50 or 5:00 p.m. on the day of the burglary. (Tr. 428).

{¶8} The detective then spoke to appellant's co-worker, who testified that he last saw appellant during their fifteen-minute 3:00 p.m. break. (Tr. 379). He told appellant to use a blower on the porches, which takes an hour to an hour and a half. (Tr. 376). He did not know if appellant completed the task. He noted that he saw appellant remove the blower from the tool garage, where it belongs, but later found it stored in the office garage. (Tr. 377).

{¶9} Appellant was arrested for burglary, a second degree felony due to the allegation that someone was present or likely to be present. See R.C. 2911.12(A)(2), (C). His case was tried to a jury where the above evidence was presented.

**{¶10}** Appellant called a fellow employee to testify as an alibi witness. He testified that after lunch ended at 12:45 p.m., he mowed grass while appellant trimmed weeds; this was not his regular duty as he was filling-in for a sick employee who normally worked with appellant. (Tr. 500). He stated that he could see appellant the whole time and that he last saw appellant at the 5:00 p.m. quitting time. (Tr. 502). He did not notice appellant using the blower but said that this was a duty that went with weed trimming.

**{¶11}** The detective then testified in rebuttal that he was not informed of this alibi witness until June of 2010 and that when he then interviewed him, the witness was unaware of what he did on the date in question but did remember cutting grass with appellant at some time between 2:00 and 4:00 p.m. (Tr. 527). The jury found appellant guilty as charged. The court sentenced him to three years in prison. Appellant filed a timely notice of appeal.

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

**{¶12}** Appellant's first assignment of error provides:

**{¶13}** "MULTIPLE INSTANCES OF ERROR, IF NOT REVERSIBLE ERROR ON THEIR OWN, RENDERED THIS CASE REVERSIBLE ON A THEORY OF CUMULATIVE ERROR."

**{¶14}** Appellant raises three errors which, although not reversible on their own, he urges constitute cumulative error. Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of multiple errors deemed harmless by themselves combine to deprive a defendant of the constitutional right to a fair trial. *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). Thus, the doctrine of cumulative error is inapplicable when there are not multiple instances of error or the cumulative effect did not deprive the defendant of the right to a fair trial. *State v. Jones*, 7th Dist. Nos. 08JE20, 08JE29, 2010-Ohio-2704, ¶ 130 citing *Garner*, 74 Ohio St.3d at 64. Moreover, where a defendant received a fair trial in general, errors are not prejudicial by "sheer weight of numbers." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 261 (finding no cumulative error in a capital case).

**{¶15}** First, appellant points to the court's ruling on a motion in limine regarding Lucas's father. The state filed a motion in limine asking that the defense be prohibited from referencing the father's prior record of misdemeanor arrests or convictions as

they did not involve dishonesty as per Evid.R. 609(A)(3). The defense filed a motion in limine asking permission to cross-examine the father about an allegation that he once forged a marijuana cultivation license. (Docket at 49; Tr. 240). The defense agreed not to reference the subsequent misdemeanor conviction of drug abuse that resulted from the incident surrounding the "weed license" as it was not an offense of dishonesty as required for admission under Evid.R. 609(A)(3). Apparently, the defense read about the "weed license" in a police blotter in an online newspaper.

{¶16} The court ruled that it would not permit cross-examination concerning the allegation that the father possessed a "weed license." (Tr. 241). The issue was not re-raised during the testimony of the father. (Tr. 338-362).

{¶17} In attacking a witness's character for truthfulness, a court may use its discretion to allow cross-examination into specific instances (but not extrinsic evidence) of a witness's conduct that are clearly probative of untruthfulness. Evid.R. 608(B) (also stating that extrinsic evidence of the specific instances of conduct is admissible under this rule if it is permitted under Evid.R. 609 concerning criminal convictions). Appellant argues that having a license to grow weed is a specific instance showing character of untruthfulness. The state responds by essentially arguing that because the article was in reference to a criminal complaint, the criminal complaint only involved drug charges, and the drug charges are indisputably inadmissible as they are not offenses of dishonesty, the alleged "weed license" is not a permissible topic.

{¶18} Initially, we note that a decision on a motion in limine is a pretrial, preliminary, precautionary, tentative, anticipatory ruling on the potential treatment of an issue to be later resolved when it arises in the context of the trial where the trial court may change its mind based upon circumstances that are developed. *State v. Grubb*, 28 Ohio St.3d 199, 201-203, 503 N.E.2d 142 (1986). A party's failure to reassert the matter at the proper point at trial constitutes a waiver of any challenge, regardless of the disposition made for a preliminary motion in limine. *Id.* at 203. Here, the in limine ruling was made prior to the start of testimony. Lucas then testified setting the context of the case. The matter was not then raised during the father's testimony. Thus, the issue could be considered waived. This is true even if the defendant concludes the motion in limine hearing by reiterating his objection to the court's ruling. *See id. See also State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 59

(objecting party must challenge evidence during trial *when issue is presented in full context*).

{¶19} We also note that there is no suggestion that there even exists a marijuana cultivation license in Ohio so that the possession of such a document could be considered an instance of forgery. In such case, the possession of such a thing may not in fact be "clearly probative" of a specific instance of dishonesty. Rather, the specific instance of dishonesty appears unclear. That is, it is unclear whether the possession of something a newspaper allegedly called a forged "weed license" is probative of truthfulness. Appellant states that information on the specific incident is contained in police reports. However, these were not mentioned to the court, shown to the court, or proffered into the record, nor was the newspaper article mentioned in his motion actually provided to the court. Thus, the court remained unaware of the facts required to determine if the allegation was clearly probative of untruthfulness. Consequently, prohibiting reference to the topic was within the trial court's sound discretion. *See* Evid.R. 608(B). *See generally State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987).

{¶20} Second, appellant complains that the court refused to allow the defense to cross-examine Lucas on whether he was a drug dealer. Appellant argues that the questions were proper to show bias and motive to lie under Evid.R. 616. As the state points out, Lucas testified on direct that he never sold any drug. (Tr. 282). Thus, the question was asked and answered.

{¶21} On cross-examination, defense counsel asked, "In that box you keep the drugs you sell; right?" (Tr. 312). As Lucas answered, "Absolutely not," the state objected to the question, and the objection was sustained. (Tr. 312-313). Thereafter, defense counsel stated, "The fact of the matter is Matt Tinney had no reason to go to you to seek Vicodin other than he knew that you had Vicodin to sell?" The state objected, and the court sustained the objection and asked the jury to disregard the comments. (Tr. 314).

{¶22} Contrary to appellant's assumption that the court was precluding questions on whether Lucas sold drugs, we note that the trial court may have sustained the objections because defense counsel sounded like he was making pronouncements as opposed to asking questions. Moreover, Lucas repeatedly stated that he did not sell his pills. He denied any dealing on direct, and the defense was

eventually permitted to ask questions on whether Lucas sold his pills. Specifically, after an unrecorded sidebar, defense counsel posited, "Okay. Matt came over buying three pills at five dollars each?" Lucas answered, "I don't sell pills, but he asked to buy them." (Tr. 321). Defense counsel noted that appellant worked and thus did not need to steal the pills when he could buy them from Lucas to which Lucas responded, "But I don't sell my prescription pills." (Tr. 322). Thus, the jury heard Lucas testify more than once that he does not sell drugs. The specific questions prohibited thus would have produced repetitive answers and likewise could be considered unduly harassing. *See State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993) (trial court has broad discretion to avoid unduly harassing questioning).

**{¶23}** The last contention here deals with the court's refusal to allow inquiry on a certain topic during cross-examination of the neighbor. Defense counsel asked the neighbor if the only people she talked to were the police and the prosecutor. When she answered in the affirmative, defense counsel stated, "So there is a particular result you want here; right?" After the court sustained the state's objection, defense counsel reiterated, "You want to see Matt Tinney get convicted?" The court sustained another objection, and defense counsel continued: "As a matter of fact, you have gone as far as calling Matt Tinney a piece of shit; haven't you?" (Tr. 455). The court sustained yet another objection and called for an off-the-record discussion after which counsel withdrew the last question. (Tr. 455-456).

**{¶24}** As the state points out, counsel withdrew the last question. As for the other two questions, once again, they are more of pronouncements than they were questions. Plus, a court can use its discretion to refuse to allow outright accusations that a neighbor must be trying to frame appellant based only upon the fact that she only spoke with the police and the prosecutor. *See Green*, 66 Ohio St.3d at 147 (trial court has broad discretion to avoid unduly harassing questioning). *See also State v. Zeh*, 31 Ohio St.3d 99, 102, 509 N.E.2d 414 (1987) (a witness has the right to choose not to be interviewed by a defendant in a criminal case prior to trial).

**{¶25}** In viewing the evidentiary issues raised by appellant here, we do not find cumulative error. Some or all of his claims are not errors at all. Even if some of the preclusions could be considered non-reversible errors alone, the cumulative effect of them would not cumulatively deprive appellant of his right to a fair trial. *See Garner*, 74 Ohio St.3d at 64. There was much circumstantial and direct evidence of appellant's

guilt here.  As discussed infra, the case is essentially one of credibility.  And, credibility would not have been significantly affected by the questions appellant sought to have answered here.  Therefore, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER TWO

{¶26} Appellant's second assignment of error states:

{¶27} "THE STATE SUBMITTED INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION."

{¶28} Sufficiency of the evidence deals with legal adequacy rather than the weight or persuasiveness of the evidence.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  In viewing a sufficiency of the evidence argument, we evaluate the evidence in the light most favorable to the prosecution.  *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found that the elements of the offense were proven beyond a reasonable doubt.  *Id.*

{¶29} The elements of the type of burglary with which appellant was convicted are: by force, stealth, or deception to trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.  R.C. 2911.11(A)(2).  Appellant argues that the element concerning someone being present or likely to be present was not satisfied here.  He states that without this element, the offense would be a third degree felony instead of a second degree felony.  *See* R.C. 2911.11(A)(3),(C).

{¶30} Although the state must show more than a possibility of presence, reasonable certainty is not required to satisfy the "likely to be present" element.  *State v. Robinson*, 7th Dist. No. 07MA19, 2008-Ohio-3090, ¶ 13, citing *State v. Benner*, 40 Ohio St.3d 301, 313, 533 N.E.2d 701 (1988) (equating "likely" with "probable").  In assessing this element, each situation must be viewed on a case-by-case basis.  *Id.* at ¶ 11.  Notably, circumstantial evidence has the same value as direct evidence.  *Id.* at ¶ 13, citing *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988).

{¶31} Thus, likelihood of presence can be inferred from the particular circumstances of a case.  *Id.* at ¶ 13, citing *State v. Fowler*, 4 Ohio St.3d 16, 18-19,

445 N.E.2d 1119 (1983) (where family was in and out on the day of entry but temporarily absent at the time of the entry, a permissive inference could be drawn that someone was likely to be present). Although we do not presume that a person is likely to be present in an occupied structure, the ability to infer from the evidence that occupants are likely to be present at some point during the burglary has been liberally construed. *See id.*, citing *State v. Graves*, 7th Dist. No. 99CA113 (May 1, 2001). *See also Fowler*, 4 Ohio St.3d at 18.

{¶32} Obviously, the mere fact that no one was home at the time of the burglary does not establish that they were not likely to arrive home that afternoon as the element is "present *or* likely to be present." R.C. 2911.11(A)(2) (emphasis added). Appellant knew that Lucas was at Nelson's Ledges. He was personally informed of this earlier in the day, and he called Lucas multiple times to ensure that he had not arrived home early.

{¶33} However, the state established that Lucas lived with his mother and his sister. (Tr. 285). Notably, appellant had only been reacquainted with Lucas for two weeks, nothing suggests that he knew the family's schedule, and they were not on vacation. In fact, Lucas testified that, during the afternoon of the burglary, his mother and sister were swimming at his grandfather's house. (Tr. 286). His testimony also shows that his family was home when he arrived around 6:00 p.m. (Tr. 286). Thus, one could infer that the mother and/or sister were likely to be home or to arrive home during the burglary.

{¶34} It could also be noted that appellant left work to commit the burglary and was seen walking fast or jogging toward the house and then retreating from the direction of the house less than four minutes later with a heavy silver box. (Tr. 441-442). Thus, there was evidence presented which one could use to infer that he did not stake out the house to ensure its emptiness.

{¶35} Construing all of the evidence in the light most favorable to the prosecution, a rational juror could reasonably determine that the "likely to be present" element was satisfied. As such, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER THREE

{¶36} Appellant's third assignment of error contends:

{¶37} "THE JUROR [SIC] RETURNED A VERDICT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶38}** Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *Thompkins*, 78 Ohio St.3d at 387. In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

**{¶39}** A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.* In fact, where a criminal case has been tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. *Id.* at 389, citing Section 3(B)(3), Article IV of the Ohio Constitution (and noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

**{¶40}** In conducting our review, we proceed under the theory that when there are two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore*, 131 Ohio App .3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Rather, we defer to the jury who was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1994); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶41}** Appellant believes that Lucas is not credible and claims that he filed a police report in order to obtain more pills to sell. Appellant states that the neighbor was not credible because she did not see him long and because there are obstructions in her yard. Appellant criticizes the detective's investigation because he did not attempt to obtain fingerprints and did not arrest Lucas when the returned pill bottles were found to contain three or four different types of pills instead of just the two for which Lucas had prescriptions. Appellant focuses on the fact that his fellow employee placed him at work at 3:00 during the fifteen-minute break and another employee testified that he could see appellant trimming weeds while he mowed the grass from after lunch until 5:00 p.m.

{¶42} The jury saw Lucas testify and could find that he was a believable victim. He insisted that he never sold his pills to appellant or anyone else, nor did he ever give appellant a pill. Merely because he kept his prescriptions in a safe does not require the presumption that he is a drug dealer trying to obtain a refill. Lucas explained that he does not have a personal medicine cabinet or a bathroom to himself for storage of the pills. In any event, he disclosed that his physician warned him to safeguard the pills as they are addictive and friends may try to relieve him of some pills.

{¶43} The neighbor's testimony was credible. She described the clothing worn by appellant, which was shown to be his work uniform. She also noted his blond hair color and the specific cut of his hair. She then identified him a few hours later in person and again on the stand. (Tr. 452). She also explained away defense counsel's inquiries about the obstructions. (Tr. 460-463).

{¶44} As for the investigation, when asked on cross-examination why he did not fingerprint the pill bottles, the detective explained that he visually inspected the bottles with a flashlight and saw no latent prints. (Tr. 411). It was outlined why fingerprinting would not be practical as the labels had been removed (suggesting that appellant removed any evidence of his prints) or many different prints could be on the bottles as the victim handled the bottles after the box was returned and it was unknown who returned the box for appellant. The detective also pointed out that for all he knew, the other pills were added by appellant after he decided to return the box to Lucas's father's house. (Tr. 406).

{¶45} Regarding the co-workers' testimony, appellant's regular partner (who had switched job duties that day due to illness) testified that he saw appellant during the 3:00 p.m. break and that he told him to clean the porches for the remainder of the day. He saw appellant remove the blower from the proper storage unit. He did not see appellant again that day. He did notice that the blower was returned to the wrong place. His testimony does not establish that appellant could not have committed the burglary after 3:15 p.m..

{¶46} The other employee could be found to lack credibility. It was emphasized that he was not provided as alibi to the detective for more than nine months and that when the detective interviewed him, his memory was not clear. Even if he was credible, this does not mean that he would have noticed if appellant had left

for a time. This employee was on a mower for hours, and he did not notice appellant using a blower.

**{¶47}** After examining the entire record, we cannot conclude that, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The jury occupied the best position to weigh the credibility of the witnesses. As such, this assignment of error is overruled.

**{¶48}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, J., concurs.