[Cite as *State v. Dean*, 2025-Ohio-342.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

  - vs -

RANDY K. DEAN,

        Defendant-Appellant.

CASE NO. 2024-P-0023

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 00196

## O P I N I O N

Decided: February 3, 2025
Judgment:  Affirmed

*Connie J. Lewandowski*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Michael A. Partlow*, P.O. Box 1562, Stow, OH 44224 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Randy K. Dean, appeals from his conviction for Burglary in the Portage County Court of Common Pleas.  For the following reasons, we affirm the judgment of the lower court.

{¶2} On March 3, 2022, Dean was indicted by the Portage County Grand Jury for Burglary, a felony of the second degree, in violation of R.C. 2911.12.  A jury trial was held on November 8 and 9, 2023, at which the following testimony and evidence were presented:

{¶3} Jody Rearick is a real estate broker who has represented Dean in the sale of multiple properties.  Relative to the present matter, she represented him in the sale of his

residence to Autumn and Randall Thomas.  The Thomases requested that various repairs be made to the property prior to purchase.  The parties also signed an addendum stating that Dean would place money in escrow to pay for any repairs to the septic system.  He was "not happy" about this.  Rearick testified that, prior to closing, the house was appraised at $10,000 lower than expected, resulting in a decreased sale price.  At that time, she was not certain if Dean was going to go through with the sale, although he ultimately did so.  As part of the sale, the parties agreed that the washer and dryer would transfer to the Thomases.  Rearick testified that she made this issue clear to Dean and it was contained in the purchase agreement.

{¶4}  Rearick testified that the contract and her conversation with Dean indicated that he would no longer have possession of the residence beginning at 6 p.m. the day after the deed was recorded.  She testified that the closing documents were signed on January 6 and the deed was filed on that date, meaning that January 7 at 6 p.m. was the latest Dean could be in the residence.

{¶5}  Autumn Thomas testified that she and her husband, Randall Thomas, signed closing documents for Dean's home on January 4, 2022, and retrieved the keys on January 5.  On January 6, she and Randall visited the home and changed all of the locks.  On January 7, they dropped off appliances at the residence in the evening and were there until approximately 8:30 p.m.  On that date, a friend of the Thomases accompanied them to view the residence and the three walked around to various rooms.  Counsel inquired, "And were you able to see if the washer and dryer were still there?" to which Autumn responded "they were still there."  When the Thomases returned on January 8, Autumn observed that the washer and dryer were missing.  She saw that the side door was "open," and there was

2

damage to the door frame and nearby drywall. Three days later, the washer and dryer were returned. She and Randall completely moved into the house in February.

{¶6} Randall provided a similar timeline as Autumn regarding the events in January, including finding the washer and dryer missing on January 8. He testified that the side door had been "kicked in," screws were missing from the lock, the door frame was cracked, and there was a hole in the drywall. He testified that he had not spoken to Dean or given him permission to enter the home.

{¶7} Deputy Mark Bacon of the Portage County Sheriff's Department responded to the Thomases' residence on January 8, 2022. He observed screws on the ground, scuff marks on the side door, and "a hole in the wall . . . where the door handle had hit the wall." He concluded that "[a]ll that damage is indicative to forced entry." Deputy Bacon spoke to Dean, who initially indicated that there was a misunderstanding with the moving company regarding removal of the washer and dryer but later admitted he had taken the items.

{¶8} Bacon also described that, in a phone conversation with Dean during the investigation, Dean "seemed to be very frustrated that . . . he had to reduce the sale price of his residence, and they had to hold back $22,000 worth of his profit from the residence" for the septic system. Randall Thomas testified that Dean argued with an inspector prior to closing when he indicated the septic system may need repairs.

{¶9} Dana Oberdove, the buyers' real estate agent, testified that after the washer and dryer were removed, she sent a text message to Dean, who indicated "it was a misunderstanding." Rearick also testified that she spoke to Dean on the phone after the items were removed and he admitted he had taken them.

{¶10} Dean testified and admitted that he took the washer and dryer. He indicated

3

that he entered the house using a piece of aluminum he slid into a gap in the side of the door because he could not remember where he had put his keys but did not "force the door open." He testified that he removed the washer and dryer early in the day on January 6. He was later informed that the washer and dryer were supposed to remain with the house, which he had not remembered, so he returned them. He indicated he had difficulty with his memory due to medical issues and did not intend to break into the house or steal the washer and dryer. He also stated that he had difficulty reading the contract due to vision problems. When asked whether he was upset that he had to place money in escrow for the septic system and decrease the purchase price due to the appraisal, he stated "I think that it was because of the COVID," noting that he had COVID at that time.

{¶11} The jury found Dean guilty of Burglary. The court ordered Dean to serve a one-year term of intensive supervision probation and two years of general probation.

{¶12} Dean timely appeals and raises the following assignments of error:

{¶13} "[1.] The trial court erred and abused its discretion by not permitting a tape of a voicemail wherein the agent of the alleged victims indicated that the victims did not wish to pursue criminal charges and that the Portage County Sheriff was behind pursuing those charges."

{¶14} "[2.] Appellant's conviction is not supported by sufficient evidence and is against the manifest weight of the evidence."

{¶15} We will consider the assignments out of order for ease of discussion. In his second assignment of error, Dean argues that the conviction for Burglary was not supported by the manifest weight or sufficiency of the evidence.

{¶16} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to

4

determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), citing Black's Law Dictionary (6 Ed.1990). In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶17} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, . . . weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-387. "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "[A] finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency." (Citation omitted.) *State v. Arcaro*, 2013-Ohio-1842, ¶ 32 (11th Dist.).

{¶18} R.C. 2911.12(A)(2) provides: "No person, by force, stealth, or deception, shall . . . [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense."

5

{¶19} The facts supported a determination by the jury that Dean entered the residence, owned by the Thomases, by breaking open a side door and took their washer and dryer. There was significant testimony to support a conclusion that he entered the home through force between approximately 8:30 p.m. on January 7, when the Thomases left the residence, and noon on January 8 when they returned, after he no longer had a right to enter the residence. There is no dispute that he took the washer and dryer, a fact which he admitted. Testimony and evidence demonstrated that these items were owned by the Thomases following the sale. Further, while Dean testified that he took the items because he did not recall they were part of the sale, this is contradicted by the fact that he took them by using force to enter the residence. His realtor also testified that the two had discussed the washer and dryer remaining with the house. Testimony was presented to demonstrate that his dissatisfaction with costs associated with the sale of the property, including expenditures for the septic system and other repairs, could have resulted in a decision to take the washer and dryer. Nonetheless, there is no question that he stole these items given the terms of the contract. The weight of the evidence supported the jury's verdict, and it follows that the conviction was supported by sufficient evidence.

{¶20} Dean argues that multiple elements were not proven by the State. First, he contends that he had the right to enter the residence, observing that Rearick testified that he could enter until January 7 at 6 p.m. under the terms of the parties' agreement. He argues that Oberdove, the buyers' realtor, testified that she discussed the situation regarding the washer and dryer with Dean on January 5, which shows he removed the items before he was no longer permitted to access the home.

{¶21} Pursuant to the parties' purchase agreement, seller was to "deliver

6

possession as occupancy to buyer on or before 6:00 p.m., 1 day after recording of the Deed." The deed was recorded on January 6, 2022. Under the agreement, the Thomases received possession as of January 7 at 6 p.m. Significant evidence supported the conclusion that Dean removed the washer and dryer after that time. Autumn's testimony demonstrated that the items were still in the residence on the evening of January 7. The Thomases both testified that on January 8, the washer and dryer were gone. This is corroborated by the fact that Deputy Bacon responded to a call regarding the missing washer and dryer on January 8 as well as realtor Oberdove's testimony that the Thomases called her to report the incident on that date.

{¶22} Dean references testimony by Oberdove that she spoke with Dean about the washer and dryer removal on January 5, which "clearly shows that Appellant removed the items prior to January 7." It is necessary to review this testimony in context:

> Attorney Srp: And did you get a call from your buyers on January 8th of 2022?
>
> Oberdove: Yes, I did . . . They were letting me know that the police were at their property [in relation to the washer and dryer].
>
> . . .
>
> Attorney Srp: Did you ever speak with Randy Dean in regards to this information?
>
> . . .
>
> Oberdove: I reached out to him via text message on January 5th. . . . [He stated t]hat it was a misunderstanding and that he will return the washer and dryer.

{¶23} It appears that Oberdove made a misstatement that she sent a message to Dean on January 5, given her testimony that she received the communication from the Thomases regarding the missing washer and dryer on January 8. Nonetheless, the

7

January 5 date was inconsistent with the testimony of the Thomases and raises an issue of credibility for the jury to decide. "[T]he trier of fact is free to believe or disbelieve all or any of the testimony" and "is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." (Citation omitted.) *State v. Jarrett*, 2023-Ohio-1627, ¶ 13 (11th Dist.) (an appellate court "must . . . give great deference to the fact finder's determination of the witnesses' credibility") (citation omitted).

{¶24} Dean also argues that the weight of the evidence indicates that "no one was present or likely to be present" at the time he entered the residence. He contends that items were taken when no one was present and the parties agreed the residence "was pretty much empty," i.e., furniture had not yet been moved into the residence.

{¶25} Pursuant to R.C. 2911.12(A)(2), "the state must prove that it was objectively likely that someone could be present at the time of the break-in." (Citation omitted.) *State v. Haas*, 2010-Ohio-6249, ¶ 33 (11th Dist.). "[L]ikely to be present" means "something more than a mere possibility," although it does not rise to the level of "reasonable certainty." *Id.*; *State v. Tinney*, 2012-Ohio-1495, ¶ 30 (7th Dist.). "A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation a person could be present." *State v. Nixon*, 2023-Ohio-4871, ¶ 126 (11th Dist.).

{¶26} Courts have found that this element can be established "by showing that the occupants of the dwelling were 'in and out on the day in question.'" *State v. Butler*, 2012-Ohio-4152, ¶ 9 (8th Dist.), citing *State v. Kilby*, 50 Ohio St.2d 21 (1977), paragraph one of the syllabus ("[w]here the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in

8

Case No. 2024-P-0023

question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence" to support a burglary conviction). *See State v. Hibbard*, 2003-Ohio-707, ¶ 19 (12th Dist.) ("Although he was not home at the time of the break-in, Wurzelbacher returned to the residence . . . that evening and discovered the break-in. This evidence, that Wurzelbacher was in and out of the home on the day in question, is sufficient to support the 'likely to be present' element of appellant's burglary conviction on this count.").

{¶27} In the present matter, we recognize that the Thomases had just purchased the residence, were in the process of moving in, but continued to reside in their apartment. However, the facts of this case allowed the jury to reach a determination that they were likely to be present at the time Dean entered the home. It has been held that a "jury is free to make inferences on likelihood of presence" and "the inference that occupants are likely to be present should be liberally construed." *State v. Robinson*, 2008-Ohio-3090, ¶ 13 (7th Dist.), citing *State v. Fowler,* 4 Ohio St.3d 16, 18 (1983).

{¶28} Testimony was presented that, after they were given the keys on January 5, the Thomases went to the residence every day, dropping off items, winterizing the home by adding heaters, and showing the home to a friend. Autumn indicated that the couple was also moving items to the home on the weekend. Although the exact time the items were taken by Dean is unknown, as noted above, the Thomases' testimony supports a conclusion that it was sometime between 8:30 p.m. on January 7 and noon on January 8, which was a Saturday. Dean testified he moved the items while it was light out, which tended to support a conclusion it was Saturday. Given that the Thomases were going to the residence daily and beginning to move items in, and particularly that it would be likely

9

they would be moving items in on a Saturday, the jury could reasonably determine it was likely they would be in the residence when the washer and dryer were removed. They were in and out of the residence on that day, as well as the preceding day. It has been held that the evidence supported a conclusion that an occupant was "likely to be present" where she was moving and "going back and forth between her old and new residences." *Hibbard* at ¶ 21-22. *Also State v. Green*, 18 Ohio App.3d 69, 70-72 (10th Dist. 1984) (an occupant was likely to be present in a house when he had moved into another residence but continued to return to the house on a regular basis to move items and make repairs).

{¶29} The second assignment of error is without merit.

{¶30} In his first assignment of error, Dean argues that the trial court erred in not admitting a voicemail in which real estate agent Oberdove indicated that her clients did not wish to pursue charges, supporting his theory that the Sheriff, rather than the homeowners, wished to pursue the charges.

{¶31} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.,* 58 Ohio St.3d 269, 271 (1991); *State v. Dyer*, 2017-Ohio-426, ¶ 40 (11th Dist.) (admission of hearsay is evaluated under an abuse of discretion standard).

{¶32} In the voicemail left by Oberdove to Rearick, Oberdove stated the following: "Apparently, they're not the ones that pressed the charges. I found this out from the lender. He basically said that they didn't want to press charges, that the Sheriff is the one that pressed the charges against him because they've had run-ins with him before and they basically said that this is the last straw that they had. I don't know how true that is but if

10

that is true, there's nothing that the buyers can do. They can't drop anything because they're not the ones that pressed the charges. . . . From my knowledge, the buyers didn't want to press charges . . . the sheriff is the one that pressed charges."

{¶33} The court did not admit the foregoing, finding it to be hearsay. The call was from the realtor, indicating what a lender had told her about whether the Thomases wished to press charges and the Sheriff's rationale for pressing charges and statements relating to that issue. We note that it primarily related to the impressions of the lender, who did not testify, and did not quote specific statements made by the Thomases. *See State v. Sellers*, 2022-Ohio-581, ¶ 36 (11th Dist.) ("[c]ourts have found a party's testimony as to their understanding of a conversation to be admissible" where they did not "communicate . . . any statement" made). Nonetheless, there were legitimate concerns about the admissibility and reliability of the statements made in the message, given that they contained conclusions based on discussions that were conveyed from the Thomases and/or the Sheriff to the lender to Oberdove.

{¶34} Dean argues "[t]he only hearsay involved in the tape was the statement by the witness that her clients did not wish to pursue charges" and questions whether this was hearsay since "the witness was inarguably their agent" without providing further argument. We observe, however, that the agent testified as to a conversation she had with the lender. Dean argues that, regardless of the foregoing, the statements were admissible because multiple hearsay exceptions apply, although he provides no argument regarding the applicability of any of these exceptions. Presuming any statements in the voicemail to be hearsay, these exceptions are inapplicable.

{¶35} The present sense impression exception "is limited to 'describing or

11

explaining' the event." *State v. Foster*, 1998 WL 684834, *5 (11th Dist. Sept. 25, 1998). A discussion of whether to pursue criminal charges does not describe or explain the event of the crime. An excited utterance requires a statement about a startling event while under the stress of that event. *State v. Dean*, 2015-Ohio-4347, ¶ 123. Again, no argument is presented showing statements about whether to prosecute made to a lender were given during such circumstances.

{¶36} Records of regularly conducted activity are admissible as an exception to hearsay when a memo, report, record, or data compilation is kept as part of the "regular practice" of a business. Evid.R. 803(6). Dean presents no argument demonstrating that a personal conversation between realtors about a decision to press charges falls under this exception. Finally, Evid.R. 803(14) and (15) relate to records and documents "purporting to establish or affect an interest in property." A decision whether to pursue charges does not relate to establishing an interest in property.

{¶37} Significantly, the State also argued below that the foregoing voicemail was inadmissible as lacking relevance. "The test for relevance is simply whether evidence has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Echols*, 2024-Ohio-5088, ¶ 35, citing Evid.R. 401. We question what factor of consequence would be impacted by the voicemail as it is unrelated to any of the elements of the crime and the Thomases themselves provided testimony to support the elements of the crime. The reason for pressing charges is of little consequence to whether the crime was committed and the prosecutor ultimately decided there was sufficient evidence to proceed, which was supported by the evidence. *See State v. Grover*, 2024-Ohio-505, ¶

12

76 (11th Dist.) ("[i]f a prosecutor has probable cause to believe that an accused committed an offense, the decision whether to prosecute, and what charges to file or bring before a grand jury, generally rests entirely within the prosecutor's discretion") (citation omitted).

{¶38} Even if we were to presume that the voicemail was improperly excluded by the trial court, "the exclusion of evidence or testimony must result in material prejudice for reversal to be warranted." *Sabath v. Sabath*, 2020-Ohio-4638, ¶ 43 (11th Dist.). First, the statements in the voicemail were refuted by the testimony of Autumn that she had not made such statements about pressing charges. She testified that she wanted to press charges against Dean because "he took away the safety of my home . . . as first time home buyers." Further, as discussed in the second assignment of error, there was significant evidence to demonstrate that it was appropriate to pursue charges against Dean and that, even if the Sheriff had personal reasons for wanting to pursue charges against Dean, the conviction for Burglary was supported by evidence independent of that desire.

{¶39} The first assignment of error is without merit.

{¶40} For the foregoing reasons, Dean's conviction for Burglary in the Portage County Court of Common Pleas is affirmed. Costs to be taxed against appellant.

ROBERT J. PATTON, P.J.,

JOHN J. EKLUND, J.,

concur.

13

Case No. 2024-P-0023