OPINION
{¶ 1} Plaintiffs-appellants Dale and Mary Petty appeal the decision of the Mahoning County Common Pleas Court, which entered judgment in favor of defendants-appellees Anderson and Loretta McGee. The issue is whether the McGees improperly interfered with the Pettys' right to receive free gas when the McGees disconnected a line at a gas well on their property that led to the Pettys' property. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} In December 1971, Raymond, Agnes and Harlin Shook entered a Lease Agreement with a gas company. The Shooks granted the company the right to all oil and gas under their described lands in North Jackson, Ohio. In return, the Shooks could lay lines to any well on said land and use free gas in three dwelling houses "on said land." The deed further states that three houses on "the above described farm" are entitled to free gas.
 {¶ 3} In March 1980, Raymond Shook purchased from an estate of an unrelated individual a house and 5.349 acres at 2244 North Salem-Warren Road, which bordered his preexisting property in North Jackson. He rented this property out to the Pettys beginning in June 1980.
 {¶ 4} The property was originally heated with fuel oil. It is claimed that in June 1981, Raymond Shook ran a gas line from the property of the gas leasehold to his new parcel, thus supplying the dwelling occupied by the Pettys with free gas.
 {¶ 5} When Raymond Shook died, the 5.349 acre parcel and house occupied by the Pettys was transferred to Harlin and Agnes Shook in May 1987. When Agnes died, that parcel was transferred solely to Harlin Shook in July 1989.
 {¶ 6} Soon thereafter, Harlin Shook sold the 5.349 acre parcel and dwelling "with the appurtenances thereof" to the Pettys for $38,000. The warranty deed was recorded on September 13, 1989. There was no express mention of a right to free gas in the purchase agreement, the deed or the title insurance.
 {¶ 7} When Harlin died, his estate sold approximately ninety acres from the original family holdings to the McGees. The title insurance for this property showed the gas lease entered in 1971. The deed to the McGees was recorded on April 15, 1998. And, this deed expressly stated that the parcels purchased included gas well interests in five gas wells under the land. In June 2001, the McGees disconnected the gas line running to the Pettys' house and connected a line to the new residence they constructed on the land subject to the gas lease.
 {¶ 8} On May 23, 2002, the Pettys filed suit against the McGees and Equitable Production and Eastern States Oil Gas Inc., the successor in interest to the lessee gas company that was the original party to the 1971 lease agreement with the Shooks. The Pettys claimed that they were the successors in interest to Harlin Shook's rights as the lessor under the lease and were also intended third-party beneficiaries of the lease. They also alleged that the McGees tortiously interfered with their rights under the contract by disrupting the flow of gas to their dwelling.
 {¶ 9} The McGees answered that the conveyance to the Pettys did not transfer any interest in the gas wells and that all interest in these wells was expressly transferred to them. The McGees also claimed that the Pettys tapped into the gas line without authorization and trespassed on their property by maintaining the line.
 {¶ 10} In 2003, all three parties filed motions for summary judgment; however the court denied these motions. In March 2004, the Pettys voluntarily dismissed the gas company without prejudice. Stipulations were filed in April 2004, establishing many of the property transfer facts determinable through attached exhibits, such as the 1971 lease agreement and the relevant deeds, purchase agreements and title insurance policies.
 {¶ 11} The Pettys and McGees then filed opposing motions for summary judgment. On October 5, 2004, the trial court overruled the opposing motions for summary judgment, finding that there were genuine issues of material fact for trial. The case was then tried to a magistrate on December 2, 2004. Post-trial briefs were submitted.
 {¶ 12} On January 21, 2005, the magistrate released a decision recommending judgment in favor of the McGees. The magistrate explained that the lease only indicated that three homes "on said land" or on "the above described farm" were entitled to utilize the gas wells. The magistrate found that none of the Shooks had any ownership interest in the 5.349 acre parcel (now owned by the Pettys) when they entered the 1971 gas and oil lease. The magistrate thus concluded that this parcel was not covered by or subject to the terms of the lease.
 {¶ 13} The magistrate also held that the warranty deed received by the Pettys does not transfer a right to gas because the term "appurtenance" only includes the right to gas if the land being transferred is subject to a gas lease; whereas here, the land being transferred was not part of the land subject to the gas lease. Finally, it was noted that the Pettys were not intended third-party beneficiaries of the lease since it was not within the parties' contemplation that free gas would be provided to a dwelling not located on the covered premises.
 {¶ 14} The magistrate concluded by making comments on equity. For instance, he noted that although the Pettys believe disconnecting the line they had been using for years is unfair, the McGees clearly purchased land subject to an oil and gas lease which they relied on to benefit their property. He also noted that the Pettys are complaining about representations made to them by individuals who are not parties to this lawsuit.
 {¶ 15} The Pettys filed timely objections to the magistrate's decision. On April 7, 2005, the court adopted the magistrate's decision and entered judgment in favor of the McGees. The Pettys [hereinafter appellants] filed timely notice of appeal.
 APPELLEES' INITIAL ARGUMENT {¶ 16} Appellees initially make arguments concerning the lack of a transcript of the magistrate's hearing. They believe that the entire appeal should be dismissed due to appellants' failure to submit this transcript for our review. In support, they cite various portions of App.R. 9.
 {¶ 17} App.R. 9(A) provides that the record on appeal consists of the original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court. App.R. 9(B) provides that when the appellant files notice of appeal, he shall order in writing from the reporter a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record and file a copy of the order with the clerk.
 {¶ 18} "Unless the entire transcript is to be included, theappellant, with the notice of appeal, shall file with the clerkof the trial court and serve on the appellee a description of the parts of the transcript that the appellant intends to include in the record, a statement that no transcript is necessary, or a statement that a statement pursuant to either App.R. 9(C) or 9(D) will be submitted, and a statement of the assignments of error the appellant intends to present on the appeal." App.R. 9(B) (Emphasis added).
 {¶ 19} Appellees conclude that since no transcript was submitted, appellants should have filed a statement that no transcript is necessary. They urge that the failure to do so permits dismissal of the appeal. However, the real issue here is whether the transcript was presented to the trial court. If so, it would already be part of the record. If not, appellants could not submit it for this court's review anyway.
 {¶ 20} At the end of their objections to the magistrate's decision, appellants claimed to have ordered a transcript for the trial court's review. However, there is no evidence in the record that such transcript was actually filed. The transcript is not in the file and the docket does not show its filing.
 {¶ 21} On appeal to this court, the docketing statement states that the record on appeal will include the complete transcript of proceedings. Yet, the court reporter's acknowledgement was not completed as required. And, a transcript of proceedings was never provided to this court. Even after appellees filed a motion to strike appellants' brief and dismiss the appeal due to the lack of a transcript, appellants did not submit any explanation to this court; nor did they file a timely reply brief to explain their failure. Also, appellants brief contains no cites to the transcript.
 {¶ 22} As aforementioned, this court is not permitted to review a transcript of a magistrate's hearing that was not presented to the trial court in support of objection. Thus, appellants could not have submitted a transcript for our review because it appears that they never submitted such transcript for the trial court's review.
 {¶ 23} "Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available." Civ.R. 53(E)(3)(c). Hence, the trial court was also bound by the magistrate's factual determinations.
 {¶ 24} This does not require dismissal of the entire appeal, however, since not all of appellants' arguments are based upon factual matters. Some of appellants' arguments are based upon legal issues. Thus, after accepting the factual determination as true, the legal issues can be reviewed by this court even in the absence of a transcript. With those limitations in place, we address appellants' sole assignment of error, which contends:
 {¶ 25} "THE TRIAL COURT ERRED WHEN IT SANCTIONED DEFENDANTSA-PPELLEES' UNAUTHORIZED AND ILLEGAL ACT OF TERMINATING FREE GAS SERVICE TO PLAINTIFFS-APPELLANTS' DWELLING HOUSE AND AWARDED THE RIGHT TO FREE GAS TO DEFENDANTS-APPELLEES."
 {¶ 26} Appellants present two questions within their assignment of error. We shall address these issues separately.
 ISSUE NUMBER ONE {¶ 27} The first question presented asks:
 {¶ 28} "Whether the Trial Court committed error to the prejudice of Plaintiffs-Appellants by refusing to restore free gas service to their dwelling house, when the right to free gas was fully and completely transferred to Plaintiffs-Appellants through a Warranty Deed, recorded many years prior to Defendants-Appellees' acquisition of their real estate."
 {¶ 29} Here, appellants rely upon the language of the warranty deed transferring to them the premises "with the appurtenances thereof." They rely on a case out of this court for their contention that the right to free gas was transferred as an appurtenance. Stapleton v. Columbia Gas Transmission Corp.
(1981), 2 Ohio App.3d 15 (7th Dist.). However, that case is distinguishable and misinterpreted by appellants.
 {¶ 30} In Stapleton, we concluded that the right to free gas ran with the surface of the leasehold tract. Id. at 18, 19, 20 (rather than running with the gas, oil and mineral estate). We thus concluded that where the deed conveys property containing a dwelling with free gas and also conveys the property's privileges and appurtenances, the right to free gas passes to the buyer where the deed does not except free gas from the conveyance. Id. at 20.
 {¶ 31} What appellants leave out of their rendition of our holding is the word "leasehold." Appellants' property and dwelling are not part of the surface of the leasehold tract. The gas and oil lease only allows free gas to three dwellings "on said land" or on "the above described farm." Since appellants' property was not owned by the parties to the gas and oil lease at the time the lease was entered, it is not subject to the gas and oil lease and is not part of the leasehold tract. Thus, theStapleton holding does not assist appellants' case.
 {¶ 32} The general holding of Stapleton was reiterated in a more recent case in this court. Sethi v. Antonucci (1998),126 Ohio App.3d 382 (7th Dist.). That case dealt with division of the land subject to a gas lease where only one dwelling can receive free gas. We noted that the free gas runs with the surface of the leasehold tract. Id. at 386. Thus, unless the right to free gas is excepted from the deed conveying the dwelling that is currently receiving free gas on the leasehold tract, the right to free gas passes under a deed with a provision conveying all privileges and appurtenances to the parcel. Id. at 387-388.
 {¶ 33} Again, our holding is premised on the fact that the free gas runs with the surface of the leasehold tract, and thus, the dwelling on the leasehold tract receiving free gas is entitled to that right where privileges and appurtenances were granted in the deed. Since, no part of the leasehold tract was granted to appellants here, the rule concerning appurtenances is inapplicable.
 {¶ 34} The unauthorized use of gas by a dwelling situated on land not covered by a gas lease cannot become a perpetual right trumping the rights of the owner of the leasehold tract merely because a deed generally grants property with appurtenances. The lease at issue specifically requires the three dwellings chosen to receive free gas to be located on the land covered by the lease. The property description in the lease does not include the land currently owned by appellants. In fact, the Shooks did not even own the 5.349 acre parcel at the time they entered the lease. Thus, that land was not covered by the lease at the time it was made and cannot be covered by that lease now.
 {¶ 35} Accordingly, the generic terms of the warranty deed do not grant the right to free gas to appellants. This issue presented is hereby overruled.
 ISSUE NUMBER TWO {¶ 36} The second issue presented queries:
 {¶ 37} "Whether the Trial Court committed error to the prejudice of Plaintiffs-Appellants by refusing to restore free gas service to their dwelling house, and assessing damages against Defendants-Appellants, when Plaintiffs-Appellants were third party beneficiaries of the right to free gas outlined in the Lease Agreement."
 {¶ 38} Lastly, appellants contend that the gas lease shows an intent to benefit unknown third-party beneficiaries by stating that three dwelling houses can receive free gas. In further support of their status as third-party beneficiaries, they claim that they materially changed their position in reliance on continued free gas by purchasing the house that they previously only rented.
 {¶ 39} As appellees point out, the same rationale set forth above precludes appellants from making this argument. The lease specifies that the three dwellings chosen to receive free gas be located "on said premises" or on "the above described farm." The boundaries of the leasehold tract were static. They cannot expand after execution of the lease. Appellants' land and dwelling are not the premises or farm described in the lease, which governs the right to free gas. Thus, the owners of a dwelling situated on land that is not subject to the lease are not intended third-party beneficiaries.
 {¶ 40} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.