[Cite as *Walters v. Goddard*, 2018-Ohio-5184.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| DONALD E. WALTERS, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2017-T-0082** |
| DANIEL GODDARD, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CV 02097.

Judgment:  Reversed and remanded.

*Ned C. Gold, Jr.*, Ford, Gold, Kovoor & Simon, LTD., 8872 East Market Street, Warren, OH  44484 (For Plaintiffs-Appellants).

*Jeffrey V. Goodman*, Fowler & Goodman L.P.A., Inc., 119 West Market Street, Warren, OH  44481 (For Defendants-Appellees).


THOMAS R. WRIGHT, P.J.


{¶1}   Appellants, Donald and Kimberly Walters, appeal the trial court's decision overruling their objections and adopting the magistrate's decision in favor of appellees, Daniel and Melissa Goddard.  We reverse and remand.

{¶2} The Walters had their home for sale in 2014 when the Goddards made an offer, which the Walters accepted. Issues arose following the home inspection, and the Goddards backed out of the agreement. The Walters filed suit for breach of contract.

{¶3} The case was referred to a magistrate for a bench trial pursuant to Civ.R. 53. Following trial, the magistrate found in the Goddard's favor, finding that the contract became null and void since the parties failed to agree in writing what material defects were to be corrected by the sellers. Thus, it concluded there was no breach.

{¶4} The Walters filed objections to the magistrate's decision, but did not secure a trial transcript for the court to review. The trial court overruled the Walters' objections and adopted the magistrate's decision in full.

{¶5} The Walters' first of two assigned errors asserts:

{¶6} "The trial court erred in determining that not all conditions precedent stated in the contract between seller and buyer leading to a duty on the part of the buyers to ultimately close on the purchase of the home that was the subject of the contract had either been performed by the buyers or waived by the sellers."

{¶7} The Walters first argue that the Goddards breached their agreement since the parties effectively agreed via email that the sellers would repair all items listed as marginal and defective on the home inspection report.

{¶8} The Walters also claim that based on the plain language of the contract, the Goddards were only entitled to have the "material" defects repaired as identified in the home inspection report, and that their additional action items were superfluous, not required to be repaired under the parties' contract. Thus, upon the Walters' agent's emailing the Goddard's agent of their consent to fix "all" items identified in the inspection

2

report, the parties' actions continued to be governed by the contract. The Walters also point out that the parties' communications via email constitute a waiver of the signed writing requirement amending their purchase agreement and that the Goddards breached their implied duty of good faith and fair dealing upon demanding additional repairs not required under the purchase agreement. Thus, the Goddard's decision to walk away from the agreement after the Walters agreed to repair all items identified in the inspection, constitutes a breach. As damages, the Walters seek the difference between their purchase agreement and the sale price for which their residence was eventually sold the following spring.

{¶9} As stated, the trial transcript was not filed prior to the trial court's consideration of the Walters' objections. Thus, our review is limited since the duty to provide a transcript to the trial court rests with the person objecting to the magistrate's decision, and without a transcript, the trial court is bound to accept the magistrate's findings of fact as true and only review the magistrate's conclusions of law based upon the accepted findings of fact. *Bayview Loan Servicing, L.L.C. v. Likely,* 9th Dist. Summit No. 28466, 2017-Ohio-7693, ¶12; *Akron v. Jackson*, 9th Dist. Summit No. 27077, 2014-Ohio-2036, ¶11.

{¶10} An appellate court is precluded from considering a trial transcript that was not before the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 654 N.E.2d 1254 (1995). Thus, our review is limited to determining whether the trial court's application of the law to the accepted facts was proper or an abuse of discretion. *Id.; Petty v. Equitable Prod. & Eastern States Oil & Gas, Inc.,* 7th Dist. Mahoning No. 05MA80, 2006-Ohio-887, ¶19.

3

**{¶11}** An abuse of discretion is a term of art reflecting a court's exercise of judgment that fails to comport with the record or logic. *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶70. "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" (Citation omitted.) *Id.*

**{¶12}** The accepted facts as determined by the magistrate and the trial court include the following. The purchase agreement was contingent upon a home inspection, and thereafter, the Goddards could proceed under one of three options set forth in the agreement.

**{¶13}** After the Goddards obtained the home inspection report on July 21, 2014, they elected to proceed under prong B of the purchase agreement, which states:

**{¶14}** "Within three (3) days after completion of the last inspection, BUYER shall elect one of the following:

**{¶15}** "* * *

**{¶16}** "(B) Accept the property subject to SELLER agreeing to have specific material defects, that were either previously disclosed in writing by the SELLER or identified in a written inspection report, repaired by a qualified contractor in a professional manner at SELLER'S expense; BUYER agrees to provide SELLER with a copy of all inspection reports and to sign an Amendment to Purchase Agreement

4

removing the inspection contingency and identifying those specific material defect(s) which are to be repaired. SELLER and BUYER shall have three (3) days from SELLER'S receipt of BUYER'S written request and copies of all inspection reports to agree in writing which material defects, if any, shall be corrected by SELLER at SELLER'S expense. If BUYER and SELLER do not agree in writing within those three (3) days then this AGREEMENT shall be null and void, and SELLER and BUYER agree to sign a mutual release * * *. SELLER agrees to provide reasonable access to the property for BUYER to review any such material defects corrected by SELLER. For purposes of this AGREEMENT, 'material defects' DO NOT include minor routine maintenance * * *."

{¶17} The home inspection identified 11 marginal items and 6 defects of concern. The Goddards, "[i]n addition to a demand to repair those marginal and defective items, * * * noted additional requests. Of the [Goddards'] additional requests, multiple items were issues discussed within the inspection report, but not necessarily classified as marginal or defective items per se."

{¶18} In response, the Walters agreed via email to correct all of the issues identified in the inspection report. Thereafter, several emails were exchanged between the parties' agents "regarding the specific nature of the repairs" before the parties' communications broke down on July 25, 2014.

{¶19} Upon applying the foregoing facts to the parties' purchase agreement, the trial court held that the purchase agreement became null and void because the parties failed to agree in writing within three days as to what material defects, if any, were to be

repaired at the seller's expense. Upon limiting our analysis only to those facts found by the trial court, we disagree with its application of law to the facts.

{¶20} "In construing the terms of a written contract, the primary objective is to give effect to the intent of the parties, which we presume rests in the language that they have chosen to employ. *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, at ¶9, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. 'Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' * * * Where the terms are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. * * *" *In re All Kelley & Ferraro Asbestos Cases,* 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶29.

{¶21} "[A] writing * * * will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.,* 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997). "Courts should attempt to harmonize provisions and words so that every word is given effect." *Christe v. GMS Mgt. Co.,* 124 Ohio App.3d 84, 88, 705 N.E.2d 691 (9th Dist.1997).

{¶22} For a plaintiff to successfully prove a breach of contract, he or she must show "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. * * * The damages awarded for a breach of contract should place the injured party in as good a position as he would have been but for the

6

breach. * * *." *Bertovich v. St. John,* 8th Dist. Cuyahoga No. 96619, 2012-Ohio-475, ¶19-20.

{¶23} Pursuant to the parties' agreement, the Goddards, as the buyers, chose to have a home inspection. Thereafter, they proceeded under prong B, which provided them with an opportunity to have the sellers remedy issues with the home identified during the home inspection. Consistent with prong B, the Goddards agreed to "provide SELLER with a copy of all inspection reports and sign an Amendment to Purchase Agreement removing the inspection contingency and identifying those specific material defect(s) which are to be repaired."

{¶24} Here, the Goddards provided the Walters with the home inspection report via email, but they did not proffer a signed amendment identifying the specific defects that they sought to have the Walters repair. Upon receipt of the signed amendment, the sellers and buyers had three days to agree in writing which defects the Walters would repair at their expense. However, this three-day time limit was not triggered because the sellers never received the signed amendment from the Goddards.

{¶25} Instead of proceeding under the contract formalities as stated under section B of the purchase agreement, the Goddards communicated via email. As found by the trial court, "[i]n addition to a demand to repair those marginal and defective items, the Goddards also noted additional requests. Of the additional requests, multiple items were issues discussed within the inspection report, but not necessarily classified as marginal or defective items per se."

{¶26} Notwithstanding the fact that the Goddards did not proffer the signed amendment, upon receipt of the Goddards' email requests and inspection report, the

7

Walters via their agent responded by email and agreed to repair "all of the * * * issues on the inspection report." As found by the trial court, the parties' communications subsequently broke down about the nature of the repairs.

{¶27} Contrary to the trial court's legal conclusions, the provision rendering the purchase agreement null and void never became applicable because the plain language of the agreement provided for these three days for the parties to agree *after* the sellers received the signed amendment from the buyers. Thereafter, the seller had three days to agree in writing which material defects they would correct, if any. This did not occur.

{¶28} The Goddards failed to satisfy their promise to present the Walters with an amendment to the purchase agreement. The Walters could not have executed an amendment that the Goddards failed to produce. We disagree with the trial court's conclusion that the purchase agreement became null and void due to a lack of formal written agreement under section B. The null and void provision never became applicable because the Goddards' breach preceded the application of this contract provision.

{¶29} The fact that parties continued to negotiate in an effort to resolve their differences about the nature of the repairs does not invalidate the fact that the Goddards failed to proffer an agreed amendment pursuant to their contractual obligation.

{¶30} Accordingly, we reverse the trial court's decision and enter judgment in the Walters' favor in light of the Goddards' breach of the purchase agreement. We remand for the trial court to determine the Walters' damages based on the evidence presented at trial.

8

{¶31} The Walters' second assigned errors argues:

{¶32} "The trial court erred in failing to take cognizance of the magistrate's arbitrary, capricious and unreasonable instruction the day before the trial and on the day of trial, just before it was to begin, directing that the trial would last no more than three hours."

{¶33} The Walters claim a denial of due process of law based on the magistrate's limitation of their presentation of evidence at trial, and the trial court's refusal to allow counsel to make a record of the limits placed on their presentation of evidence at trial.

{¶34} The Walters seek reversal and remand to permit them to present additional evidence that they were precluded from presenting based on the three-hour time limit for their bench trial. The Walters also claim that they did not agree to this abbreviated time limit for trial and that their attorney was notified only one day before trial about this time limit.

{¶35} Article I, Section 16 of the Ohio Constitution, *Redress for injury; due process,* provides:

{¶36} "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

{¶37} Section One of the Fourteenth Amendment to the United States Constitution similarly states that no state shall "deprive any person of life, liberty, or

property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**{¶38}** "Although a trial court may set reasonable time, place, and manner restrictions on access to the courts and initiate rules regarding the administration of justice, a trial court should refrain from placing limitations on the party's right to be heard." *Coburn v. Auto-Owners Ins. Co.*, 189 Ohio App.3d 322, 2010-Ohio-3327, 938 N.E.2d 400, ¶52.

**{¶39}** As stated previously, the Walters failed to file the trial transcript with the trial court before it considered their objections to the magistrate's decision. Thus, we are likewise precluded from reviewing the trial transcript upon considering their appellate arguments. *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 654 N.E.2d 1254 (1995); *Petty v. Equitable Prod. & Eastern States Oil & Gas, Inc.,* 7th Dist. Mahoning No. 05MA80, 2006-Ohio-887, ¶19. We can only review the trial court's application of the governing law to its factual findings.

**{¶40}** The trial court found that the time limit placed on the presentation of their case was nothing but proper courtroom management. Because there is no record evidencing the substance of the Walters' allegations under this assigned error, we cannot consider whether they preserved this issue for review or if the time constraints were reasonable.

**{¶41}** Accordingly, the Walters' second assigned error lacks merit.

**{¶42}** The trial court's decision is reversed and the case is remanded.


COLLEEN MARY O'TOOLE, J., concurs in judgment only,


10

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶43} I respectfully dissent and would affirm the decision of the court below. The majority not only reverses the judgment of the lower court but orders judgment to be entered in favor of the appellants as a matter of law. In reaching its desired result, the majority has exceeded the appropriate scope of appellate review and imposed a contrived and/or unreasonable interpretation on the parties' contract.

{¶44} The key provision of the Purchase Agreement provides:

> Within three (3) days after completion of the last inspection, BUYER [the Goddards] shall * * * [a]ccept the property subject to SELLER [the Walters] agreeing to have specific material defects * * * repaired * * *. BUYER agrees to provide SELLER with a copy of all inspection reports and to sign an *Amendment to Purchase Agreement* removing the inspection contingency and identifying those specific material defects which are to be repaired. SELLER and BUYER shall have three (3) days from the SELLER'S receipt of the BUYER'S written request and copies of inspection reports to agree in writing which material defect(s), if any, shall be corrected by SELLER at SELLER'S expense. If BUYER and SELLER do not agree in writing within those three (3) days, then this AGREEMENT shall be null and void * * *.

{¶45} The trial court found as follows:

> The Court finds this language is clear and is not ambiguous or subject to interpretation. * * * [T]he Agreement provided the Goddards and Walters had three days to 'agree in writing which material defects, if any, * * *' were to be corrected. * * * [T]here is no evidence the Goddards breached the Agreement since by its

11

own terms it became null and void if the parties failed to execute an additional amendment outlining the repair terms following the inspection report.

{¶46} Rejecting the clear and unambiguous import of this provision, the majority adopts the interpretation that the signing of an Amendment to Purchase Agreement is a condition precedent to the Buyer and Seller agreeing in writing as to which material defects are to be corrected by the Seller at the Seller's expense. According to the majority, because the Goddards "did not proffer a signed amendment identifying the specific defects that they sought to have the Walters repair," the "three-day time limit was not triggered" and "[t]he null and void provision never became applicable." *Supra* at ¶ 24 and 28.

{¶47} The essential difference between the lower court's interpretation and the majority's interpretation is in the language "identifying those specific material defects which are to be repaired." For the lower court, the material defects to be identified are the defects which the Buyer and Seller have agreed to be repaired. For the majority, the material defects are the defects that the Buyer proposes the Seller should repair. For multiple reasons, the lower court's interpretation should be affirmed.

{¶48} Neither the lower court, nor the parties themselves understood the failure to provide an Amendment to Purchase Agreement as a material breach of the contract. On the contrary, it was the Walters' position that, despite the failure to provide the Amendment, they and the Goddards had reached an agreement regarding the defects to be repaired:

> On July 24, Mrs. Goddard acknowledged through her agent * * * her full understanding that the Walters were "**willing to address the issues that were marked on the inspection report …**" * * * **So, at that point, there was an agreement.** * * * The Walters had

12

> completed all they were required [to do] to trigger the Goddards['] duty to close on the contract by August 25. But the Goddards did not. They breached the contract and refused to close.

(Emphasis sic.) Memorandum of Plaintiffs before the Magistrate, at 11-12.

**{¶49}** In fact, the Walters' Objections to the Magistrate's Decision argues a position directly contrary to the position adopted by the majority: "**Their** [the Goddards'] **failure to provide the Amendment to the Walters does not terminate their duty to complete the contract. That makes no legal sense.**" Objections to Magistrate's Decision, n.p.

**{¶50}** I agree that such an interpretation makes no legal sense. The provision requiring the Goddards as buyers to execute an Amendment to Purchase Agreement "removing the inspection contingency and identifying those specific material defects which are to be repaired" makes no sense unless the parties have actually identified and agreed upon the defects to be repaired.

**{¶51}** Assuming arguendo, that the failure was a breach, there are no convincing reasons why it should be interpreted as a material breach. "It is well-settled that '[a] material breach of contract' is a failure to do something that is *so fundamental* to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform.'" (Citation omitted.) *Price v. KNL Custom Homes, Inc.*, 2015-Ohio-436, 28 N.E.3d 640, ¶ 32 (9th Dist.). As the Walters' own position makes clear, the duty to provide an Amendment to Purchase Agreement was not so fundamental to the contract that it made it impossible for the parties to agree regarding the defects to be repaired.

13

{¶52} Moreover, the issue of whether the alleged breach identified by the majority was material so as to excuse further performance would have been a factual question to be determined by the trier of fact. *O'Brien v. Ohio State Univ.*, Ct. of Cl. No. 2004-10230, 2005-Ohio-3335, ¶ 44 ("the determination whether a material breach of an agreement has occurred is generally a question of fact," and "only where a contract is clear in making a certain event a material breach of that contract * * * must [the court] respect that contractual provision"); *H & H Glass, Inc. v. Empire Bldg. Co., LLC*, 1st Dist. Hamilton Nos. C-150059 and C-150227, 2016-Ohio-3029, ¶ 8.

{¶53} The majority's resolution of this appeal goes far beyond merely reviewing the application of law to the facts in the lower court's decision. The majority raises issues never contemplated or argued by the parties – issues which lay beyond the scope of appellate review inasmuch as no hearing transcript was before the trial court when ruling on Objections to the Magistrate's Decision. Civ.R. 53(D)(3)(b)(iv) ("[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)").

{¶54} For the foregoing reasons, I respectfully dissent and would affirm the decision of the court below.